### HUFFINGTON v. DOUGHTIE et al.

#### No. 10517.

Court of Civil Appeals of Texas. Galveston.

Jan. 6, 1938.

Rehearing Denied Feb. 10, 1938.

W. P. Hamblen and W. P. Hamblen, Jr., both of Houston, for appellant.

Bernard A. Golding and G. H. Stubblefield, both of Houston, for appellee Holderreith.

Vinson, Elkins, Weems & Francis and George E. B. Peddy, all of Houston, for appellee Standard Oil Co. of Kansas.

Farish, Durno & Gordon and R. S. Durno, all of Houston, for appellee Steve Farish, individually and as trustee.

James G. Donovan and Wilmot F. Warner, both of Houston, for appellees S. T. Doughtie and C. F. Hoffman.

Bernard A. Golding, George E. B. Peddy, and R. S. Durno, all of Houston, of counsel, for appellees.

CODY, Justice.

Appellant, as plaintiff in the trial court, brought suit against appellees in trespass to try title to recover from them title and possession of an undivided one-third interest in a tract of approximately 615 acres, in Harris county; and for damages, and against appellees C. F. Hoffman and the Standard Oil Company of Kansas for the value of one-third of the oil, gas, and other minerals removed. Among other defenses appellees pleaded the five and ten-year statutes of limitations which the jury, in answer to special issues, sustained. Appellant here contends that: First, the court should have instructed a verdict

in his favor; second, the court should at least have submitted a special issue on whether appellees recognized his, appellant's, title, as being that of a cotenant of theirs, so that their possession inured to his benefit.

The property in controversy was by general warranty deed, dated September 18, 1917, conveyed by William Sippel and wife to R. M. Huffington, for the consideration of $7,383, of which $1,845 cash was paid, and the balance represented by grantee's four promissory vendor's lien notes, for the sum of $1,384 each, and payable to the order of Sippel, respectively, on or before two, three, four, and five years from date. R. M. Huffington, grantee, under date of June 25, 1917, made a written agreement of partnership with G. W. Brantigan, Jacob Dekkers, and J. A. Steger, Jr.; the name of the partnership thus formed was R. M. Huffington & Co. Among the many provisions of this agreement was one requiring any partner desiring to sell his interest to give the refusal of it to any one or more of his partners at any price he might be offered by any other person; and further reciting that each of the partners owned in equal shares the property listed in such agreement, among which was the property in controversy here, "bought from Wm. Sippel, and taken in the name of R. M. Huffington." Subsequently, and before July 31, 1918, the interest of Dekkers was acquired by the three remaining partners in equal shares. On the date last mentioned, J. A. Steger, Jr., sold to appellant —brother of R. M. Huffington—his interest in R. M. Huffington & Co., conveying to him by general warranty deed, among other property, his interest in the 615-acre tract.

Appellees acquired their interest in the land by a general warranty deed, dated October 20, 1920, from R. M. Huffington, and R. M. Huffington & Co. (in the execution of which appellant did not join). The consideration therefor being $13,000 cash, and the assumption of the payment of notes Nos. 2, 3, and 4, for $1,384.50 each, described in the deed from William Sippel and wife to R. M. Huffington. Appellees are either the grantees in this deed, or hold under such grantees.

The deed last referred to purports on its face to convey the entire estate to the grantees therein to the entire 615-acre tract. It was duly recorded in the deed records of Harris county. At the time of this conveyance Lige Thomas was tenant of the partners in possession of the land. He was continued in possession as tenant of the grantees for the remainder of 1920, for all of 1921, and as tenant of a portion of the land for 1922. On January 1, 1923, the grantees in the deed placed tenants in possession other than Lige. Appellant contends that appellees, in permitting a tenant placed there by himself to remain on the property after the registration of their deed, recognized, as a matter of law, appellant's title as a a tenant in common with them in the property.

It is, of course, "a familiar rule in this state that when one tenant in common executes a deed purporting to convey the entire premises to a third person, who enters into possession thereof, claiming title to the whole, this will constitute a disseizin of the cotenants and after the expiration of the statutory period will bar the right of the cotenants to recover. McBurney v. Knox, Tex.Com.App., 273 S.W. 819, 820. As was said in Puckett v. McDaniel, 8 Tex.Civ.App. 630, 28 S. W. 360, 361, 'The possession by a tenant in common, unless the facts clearly show a possession adverse and hostile to the title of his co-owners, under such circumstances as to charge them with notice that his holding is adverse * * * will not serve as a basis upon which to rest the defense of limitation. But, upon the contrary, when it does appear that the tenant is in actual possession, asserting an exclusive right to the property under a deed or deeds conveying to him by specific description the property in controversy, and his cotenants in common know of the existence of such deeds, and there exist circumstances that show that the one so holding is claiming by virtue of such deeds, his possession will be considered in keeping with the title under which he claims, and will be regarded as adverse to the title of his cotenants.'"

However, as indicated, appellant contends that in entering the 615 acres under their deed, appellees evidenced their intention, as a matter of law, not to enter under the title which their deed purports on its face to convey, both as respects the extent of the land and the nature of the interest, but they evidenced, as a matter of law, the intention to acquire only such interest as R. M. Huffington and R. M.

Huffington & Co. owned in the property, and could convey; that he was not disseized by the possession taken by appellees under their deed on October 20, 1920, because they took possession by Lige Thomas, who was appellant's tenant in possession of his undivided one-third interest at the time he became appellees' tenant; and that Lige's possession of such third interest could not, as a matter of law, become hostile so long as he remained in possession. This theory, appellant further contends, was adopted by the trial court, as appears from the fact that the issues submitted to the jury were framed to ask the jury to find for appellees on the pleas of limitation only in case the jury should find appellees had held peaceable and adverse possession for periods of five years or ten years after January 1, 1923 (the date Lige ceased to be a tenant in charge of at least a portion of the property), and prior to March 16, 1933.

■ It is quite clear to us from the form in which the special issues were submitted that the trial court did try the case on the theory that, so long as Lige was permitted to remain as a tenant on the premises, appellees' possession could not in fact be adverse to appellant. But it does not necessarily follow that because appellees did not succeed in ousting appellant from the premises until January 1, 1923, that they did not enter, claiming all the title their deed, on its face, purported to give them. Though it was affirmed by appellant, it was denied by appellees, that they had any actual knowledge that he owned any interest in the land. If appellees thought that in acquiring their deed from R. M. Huffington and R. M. Huffington & Co., they acquired the entire estate in the property, they, of course, could not have known that in continuing Lige as a tenant on the property they were allowing appellant's tenant to remain on there, and could not, by so doing, be taken to have recognized an interest in appellant that they thought they had in fact acquired by their deed. Though the deed failed to convey to appellees the appellant's interest in the land, it had, with its registration, distinct from any office of a conveyance of his title, the force of notice to him of the adverse claim of appellees to the land. Roseborough v. Cook, 108 Tex. 364, 194 S.W. 131. No doubt the statute of limitations did not begin to run against appellant so long as Lige was suffered to continue the possession he acquired when he entered as appellant's tenant. But it has never been held that a grantee of the entire estate from a grantor who is a mere cotenant must oust such grantor's cotenants at the time his deed is placed of record, or not at all. In the McBurney Case, supra, the date of the deed was May 10, 1871, while the grantee did not make entry thereunder until 1895 so as to effect an ouster of plaintiffs, and make his possession thereafter adverse as to them. In Church v. Waggoner, 78 Tex. 200, 14 S.W. 581, the adverse claim of the grantee in a deed from a tenant in common was sustained to the entire estate and whole tract, though a period of some months intervened between the registration of the deed and the entry thereunder by the grantee. In the Roseborough Case, supra, the effect of a deed and its registration as notice, and entry thereunder, although not adverse at its inception by reason of pending litigation, was held to have become adverse thereafter, when judgment was entered in such pending litigation.

■ From what has been said, we do not mean to intimate that there was no evidence before the court from which the jury might have found that at least one or more of the appellees recognized the title of appellant. Had appellant requested the submission of such an issue, we would have a very different case before us. But from what has been said, it abundantly appears that the evidence was ample to have supported a finding by the jury to the effect that there was no such recognition. Article 2190, as amended in 1931, Vernon's Ann.Civ.St. art. 2190, provides:

"Failure to submit an issue shall not be deemed a ground for reversal of the judgment, unless its submission has been requested in writing by the party complaining of the judgment. Upon appeal or Writ of Error, an issue not submitted and not requested is deemed as found by the Court in such manner as to support the judgment if there is evidence to sustain such finding."

It was therefore not reversible error for the court not to submit such an issue, no request having been made therefor.

■ Appellant is mistaken in his assumption that he held a legal, as distinguished from an equitable, title to an undivided one-third interest in the property. The conveyance from William Sippel and

wife was to R. M. Huffington. The partnership agreement declared that though the conveyance to the property was taken in the name of R. M. Huffington, it belonged equally to the four partners. No issue is made that appellees are innocent purchasers for value, as they acquiesce in the view that they had constructive knowledge of appellant's interest. But appellant's proof establishes that his interest was held in the name of R. M. Huffington, in trust for the members of the partnership. Under these circumstances, appellees were entitled to the application of the doctrine of stale demand, under their plea of not guilty. Mayes v. Manning, 73 Tex. 43, 11 S.W. 136; Montgomery v. Noyes, 73 Tex. 203, 11 S.W. 138, 139. As appellees paid and assumed payment of about $13,000 cash, plus the three notes assumed for the property which had been conveyed to R. M. Huffington about three years before for about $1,845, plus the four notes of $1,384.50 each, it seems that they probably paid a fair price for it. The notes assumed by appellees were an encumbrance against the property, which had to be protected against. For more than ten years appellant stood by, leaving it to appellees to pay off the encumbrance. When he filed suit in 1934, after oil had been discovered on the property, for title and possession to an undivided one-third of the property and for the value of a third of the oil produced, he had been guilty of laches, and his demand was stale. "It is generally accepted that the doctrine of laches is, not like limitation, a mere matter of time, but principally a question of the inequity of permitting a claim to be enforced; this inequity being founded on some change in the condition or relations of the property or the parties." Brady v. Garrett, Tex.Civ.App., 66 S.W.2d 502, 504. The right of appellant to recover from appellees, who are shown to have acquired the legal title to the property from R. M. Huffington, albeit subject to the duty to hold such title for the benefit of appellant to the extent of a one-third interest, was an equitable demand. "An equitable demand will become stale in 10 years after suit might have been brought without some excuse for the delay; the same being the longest period of limitation." Montgomery v. Noyes, supra.

The trial court made no reversible error, and its judgment is ordered affirmed.

Affirmed.

PLEASANTS, C. J., absent.

On Motion for Rehearing.

CODY, Justice.

Appellees S. T. Doughtie and C. F. Hoffman object to the consideration of appellant's motion for rehearing because of its being filed after the time for filing motions for rehearing as fixed by statute had lapsed. Unless appellant gives sufficient facts for this court to determine whether or not appellant had good cause for such delay, we will have to sustain such objection. In his motion appellant contends that the trial court erred in failing to submit a special issue to the jury on whether there had been a recognition of his title by appellees or any of them, in the absence of his request therefor. If appellant makes such showing as will authorize the consideration of his motion, we will refuse it because the trial court's failure to submit such unrequested issue was not error. R.S. art. 2190, as amended in 1931, Vernon's Ann.Civ.St. art. 2190; Moore v. Pierson, 100 Tex. 113, 94 S.W. 1132; Gulf Ry. Co. v. Conley, 113 Tex. 472, 260 S.W. 561, 32 A.L.R. 1183.

Motion for rehearing refused.

PLEASANTS, C. J., absent.