## WEATHERFORD v. WEATHERFORD.

(Court of Civil Appeals of Texas. Dallas. Jan. 18, 1913. On Motion for Rehearing, Feb. 8, 1913.)

1. TRIAL (§ 143*)—DIRECTION OF VERDICT—CONFLICTING EVIDENCE.

Where, in trespass to try title, the evidence was conflicting as to whether defendant was entitled to one-half of the land, it was error to direct a verdict for plaintiff.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 342, 343; Dec. Dig. § 143.*]

2. ADVERSE POSSESSION (§ 61*) — TITLE BY LIMITATIONS—NOTICE—SUFFICIENCY.

Where a father and son agreed to buy land jointly, and the son paid one-half of the first payment, and the father fraudulently procured the vendor's agent to erase his son's name from the deed, and had it so recorded without his son's knowledge, the father's possession under such recorded deed could not ripen into title by limitations, where the son had no notice that his father was claiming possession adversely to him; the recording of the deed not giving him notice.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 315–322; Dec. Dig. § 61.*]

3. TRESPASS TO TRY TITLE (§ 22*)—RECOVERY BY DEFENDANT—CONDITIONS PRECEDENT—TENDER IN PLEADING.

Where, in trespass to try title, defendant answered, claiming one-half the land as joint purchaser with plaintiff, and that plaintiff by fraud procured a deed in his individual name, and prayed for general and equitable relief, and the plaintiff replied that he had executed a trust deed on the land to secure the unpaid price, and defendant replied, admitting the outstanding loan, defendant was not required to offer by pleading to pay any part of the unpaid purchase money which was not yet due.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 22.*]

Appeal from District Court, Hunt County; T. D. Montrose, Judge.

Action by J. G. Weatherford against W. F. Weatherford. From judgment for plaintiff, defendant appeals. Reversed and remanded, and motion for rehearing overruled.

Thompson & Manning and Neyland & Neyland, all of Greenville, for appellant. Sherrill & Starnes, of Greenville, for appellee

RAINEY, C. J. The statement of the nature of the case, taken from appellant's brief, is:

"This is an action of trespass to try title for the land described in plaintiff's petition, and winding up with a declaration that the plaintiff 'has had and held peaceable and adverse possession of the land hereinafter described, cultivating, using, and enjoying the

same, and paying the taxes thereon, and claiming under a deed duly registered, for more than five years next before the defendant entered upon the same and ejected him therefrom, and he is entitled to have judgment for said land by reason of the five-year statute of limitation, which he here pleads.' In answer to the petition, the defendant in his amended answer pleads a general denial; that J. G. Weatherford and the defendant, W. F. Weatherford, were jointly interested in the purchase of the land in controversy; that he (defendant) furnished one-half of the money to make the first payment on same; that the deed was originally made out to both plaintiff and defendant; that the plaintiff, J. G. Weatherford, for the purpose of defrauding defendant out of one-half of the land, procured his (defendant's) name to be erased or obscured from the deed without defendant's consent, and recorded the deed so caused by him to be altered; that the plaintiff was and is a man of mature years, well versed in business affairs, and is the father of defendant; that the defendant is a man of limited business experience and education, and trusted and relied implicitly on his father, the plaintiff; that the plaintiff transacted all the details of the purchase, and the defendant, trusting and relying on his father, did not suspect that his name was not in the deed as recorded as one of the grantees; that after the record of the said deed the said land was partitioned between the plaintiff and defendant, the plaintiff taking and cultivating the west half and the defendant the east half thereof; that part of the said land was fenced, and the plaintiff and defendant each paid one-half of the expenses of such fence; that defendant moved with his family to Oklahoma in November, 1902, and left the management and control of his interest in the land in the hands of his father, the plaintiff, giving his father the use of said land to pay taxes and interest on the undue loan on the land; that said agreement was made in good faith, and was never in any way repudiated by the plaintiff, until just before this suit was brought.

"And for further answer, the defendant says that just after the death of plaintiff's wife, defendant's mother, and while defendant was living in Oklahoma, the plaintiff agreed that if the defendant would return to Hunt county, Texas, and if he (defendant) and his wife would keep house for plaintiff, that he would give the defendant his (plaintiff's) one-half interest in the land in controversy; that the defendant and his family accepted the said offer, and returned to Hunt county, and kept house for the plaintiff, and took possession of all the land in controversy in accordance with said contract, and made permanent and valuable improvements on same, setting them out, and considered it as his own, and did not know anything to the contrary, until just before the commencement of this suit. And, further, the defendant shows that he paid $201.15 of the purchase money of said land, and placed fencing on said land to the value of $100, and constructed a pool on same to the value of $400. Defendant prayed for all of the land, and, in the event that such judgment was denied him, that he have judgment for the amount of purchase money paid by him, together with a judgment for the value of his improvements made by him.

"Plaintiff filed a supplemental petition, which contains: (1) General demurrer; (2) special exceptions; (3) general denial; (4) special answer, alleging conveyance of land to plaintiff, and blotting out of the defendant's name in deed before delivery of same to plaintiff, the payment of the first installment of the purchase money, and the filing of the deed for record in Hunt county, on January 4, 1902, and further alleging that he has openly claimed, cultivated, and used said premises with the full knowledge of defendant; (5) further alleges that he executed a note for $800 for balance of purchase money to the vendor, the Equitable Securities Company, and secured same with a deed of trust on the land due in five years from the date of the deed, and, not being able to pay same when due, he procured a loan from the Colonial & United States Mortgage Company for $800, and secured it with a deed in trust on the premises to pay off the former deed of trust; (6) on the return of defendant from Oklahoma, plaintiff alleges that defendant paid his $64 rent for the premises for the year 1910, but refused to pay rent for 1911, that defendant knew there was a deed of trust on the land, or should have known it, and that defendant recognized it as plaintiff's land, until some time in 1910; (7) that while defendant had the premises rented he made a pool thereon for the convenience of plaintiff and defendant, and that he pastured the cattle of other people thereon, and sold wood off same, and used the money as his own, but that he was willing for him to have said money; (8) that defendant should not recover the money he had paid plaintiff as part of the purchase money thereof, because plaintiff alleges he repaid it, and, even if he had not repaid it, the same is barred by the statute of limitation of two and four years. Plaintiff denies that he ever agreed to convey the defendant any part of the land to support and maintain him, and denies that defendant ever made any payment or valuable improvements on the land, etc.

"To the said supplemental petition the defendant files a supplemental answer, admitting that there is a lien on the land of $800, and denying all other material matters alleged in plaintiff's petition. On these pleadings, and the evidence adduced, the cause was tried with a jury on February 27, 1912, and, the court having directed the jury to return a verdict in plaintiff's favor, it was

so returned. And a judgment in accordance with the verdict was entered."

[1] The evidence was conflicting on the proposition whether or not appellant, W. F. Weatherford, was entitled to one-half of the land in suit, and, as this issue was a question for the jury, the court erred in giving a peremptory charge to find for appellee.

[2] If there was an understanding between W. F. and J. G. Weatherford that they were to buy the land jointly, and W. F. Weatherford paid half of the first payment of the purchase money, and J. G. Weatherford, who conducted the negotiations, procured the agent of the vendor to erase the name of W. F. Weatherford from the deed, and had the deed so recorded, without the knowledge and consent of appellant, such conduct was a fraud upon appellant and not binding upon him. Therefore the recording of the deed by appellee, and his taking possession of the land and holding it for five years, under such facts, did not put the statute of limitation into operation against appellant, unless appellee repudiated appellant's claim and notified appellee that the possession was adverse to him. According to appellant's evidence, the erasure of his name was a fraud upon him, and the mere recording of the deed did not put him upon notice of the erasure. He had the right to rely upon the deed being made and recorded in accordance with the understanding between them. The relation of father and son was such as to justify appellant in relying upon the agreement being adhered to as made. If his testimony is true, he cannot be charged with constructive notice of the fraud perpetrated by his father, and he was not required to act until the fraud was discovered by him.

[3] He was not required to offer, by pleading, to pay any part of the purchase money not paid, as appellee had paid only his half, and had secured the balance by a deed of trust on the land. If, under the evidence, the jury should find for appellant, he, of course, would be bound for his half of that amount; that is, the half he had not paid of the purchase price.

Under the evidence appellant is not entitled to recover appellee's one-half of the land on the plea of parol gift. Such facts were not shown as authorized the court to require a performance of the promise alleged.

The judgment is reversed, and cause remanded.

### On Motion for Rehearing.

It is insisted that we erred in holding that appellant was not required to offer by pleading to pay any part of the purchase money not paid, etc. Appellee sued in action of trespass to try title. Appellant answered, claiming one-half the land as a joint purchaser with appellee, and charging that appellee negotiated the transaction and took the deed in his individual name, which was unknown to appellant, etc., and prayed for general and equitable relief. Appellee replied by setting up, among other things, that he had executed a trust deed on the land to secure a note given by him for the balance of the purchase money, which was outstanding. Appellant replied, and admitted the outstanding of the loan for the purchase money, and prayed as in his amended answer.

We recognize the equitable rule, as laid down in Hoffman v. Buchanan, 57 Tex. Civ. App. 368, 123 S. W. 171, that he who seeks equity must do equity; but does this rule apply to appellant, when he admits the existence of the loan and asks for equitable relief in the premises? The debt was not due, and we think under the pleadings, if appellant recovered, the court, in entering judgment, should make an equitable adjustment in regard to the payment of the purchase price due on the land. If appellant's testimony be true, and that was a question for the jury, the appellee under his pleading was not entitled to recover the land in an action of trespass to try title.

The case was not properly submitted to the jury, and we think our disposition of it, in reversing and remanding it, was proper.

The motion for rehearing is overruled.